**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISON**

**Case No.: 1:25-cv-23899-GAYLES**

**GRUPO ALAZÁN, C.A.,**

    **Petitioner**,

**v.**

**PEDRO ANDRES ROJAS CHIRINOS,**

    **Respondent,**

**and**

**JPMORGAN CHASE BANK, N.A.,**

    **Relief Respondent.**

    _____/

## <u>ORDER</u>

**THIS CAUSE** comes before the Court on Petitioner Grupo Alazán, C.A.'s ("Grupo") Verified Petition to Confirm and Enforce Interim International Arbitration Award ("Petition"), [ECF No. 1], against Respondent Pedro Andres Rojas Chirinos ("Rojas"). Rojas filed a Verified Response in Opposition to the Petition, [ECF No. 16], to which Grupo filed a Reply, [ECF No. 23]. The Court has reviewed the Petition and the record and is otherwise fully advised. For the reasons that follow, the Petition is **GRANTED**.

**I.    BACKGROUND**

    **A.    The Underlying Dispute**

On July 25, 2023, Grupo, a Venezuelan company, and Rojas, a Venezuelan citizen, signed an agreement whereby Grupo would acquire 80% of the shares in four Venezuelan companies owned and controlled by Rojas in exchange for a purchase price of $16 million ("Framework

Agreement"). [ECF No. 35–1 at 19–31]. On November 16, 2023, Grupo and Rojas signed a Shareholders' Agreement, (together with Framework Agreement, the "Agreements"), to facilitate the operation of the four companies during a one-year transitional period. [ECF No. 16 at 2].

The Agreements contain similar arbitration clauses. The Framework Agreement provides that "[a]ny controversy or dispute regarding the existence, scope, interpretation, and performance of" the Framework Agreement "be definitively resolved through institutional arbitration before the Arbitration Center of the Caracas Chamber of Commerce (CACC), in the city of Caracas, Venezuela[.]" [ECF No. 35–1 at 54]. Importantly, this clause allows either party to "request precautionary measures" from the "Arbitral Tribunal" or "any authority in case of urgency." *Id.* at 55. Likewise, the Shareholders' Agreement provides that "[a]ny contractual or non-contractual dispute arising in connection with" the Shareholders' Agreement "be definitively resolved through Arbitration" and "by an arbitral tribunal[.]" [ECF No.1–2 at 8].

Within a few months, the parties' business venture fell apart, with each party claiming that the other side failed to perform under the Agreements. [ECF No. 1, ¶¶ 22–26; ECF No. 16 at 3]. On August 9, 2024, seeking to prevent what it claimed to be irreparable harm before commencing arbitration proceedings, Grupo sought precautionary measures relief from a Venezuelan court. [ECF No. 1, ¶¶ 27–30; ECF No. 1–2 at 13]. Five days later, the Venezuelan court granted Grupo's request, ordering the attachment of Rojas's assets and freezing up to $16.8 million of Rojas's funds, including funds Rojas held in an account with JPMorgan Chase Bank ("JPMorgan").[1] [ECF

---

[1] On September 23, 2024, Grupo filed a Verified Complaint for Recognition of Foreign Injunction ("Complaint") with the Eleventh Judicial Circuit in and for Miami-Dade County, Florida ("State Court"). [ECF No. 1, ¶ 38; ECF No. 16–7]. Grupo's Complaint requested the State Court to recognize and enforce the Venezuelan court's order. [ECF No. 1, ¶ 39; ECF No. 16–7 at 8]. In response, JPMorgan filed an interpleader complaint in the State Court against Grupo and Rojas, alleging that "it restricted approximately $2,091,247.07 in accounts owned or controlled by Mr. Rojas due to [Grupo's] state court action and the demand for arbitration[.]" [ECF No. 1, ¶ 43]. JPMorgan sought, through its interpleader action, to deposit the restricted funds into the court registry and be discharged from any further liability. *Id.* ¶ 45. On September 8, 2025, Grupo dismissed the State Court action. [ECF No. 16–15].

No. 1–2 at 13; ECF No. 1–1 at 38–45]. Shortly after the Venezuelan court's ruling, Grupo commenced arbitration proceedings.

### B. The Arbitration Proceeding

On September 13, 2024, relying on the Agreements' arbitration clauses, Grupo filed its demand for arbitration with the CACC to adjudicate the underlying disputes between the parties. [ECF No. 1, ¶¶ 40–41; ECF No. 16–6]. The CACC's Arbitral Tribunal bifurcated the arbitration proceeding into "two separate proceedings": the first independently addressed "the dispute between the parties regarding a precautionary measure requested by" Grupo, and the second concerns the "merits" of the dispute. [ECF No. 1–2 at 9]. Critically, "both parties agree[d] that th[e] Arbitral Tribunal has jurisdiction to rule on the precautionary measure[.]" *Id.* at 22.

On June 17, 2025, after a hearing, the Arbitral Tribunal issued its ruling, freezing and attaching $1.5 million of Rojas's funds held in a JPMorgan account (the "Arbitration Award").[2] [ECF No. 1–2 at 39–40]. The Arbitration Award provides that "[n]either party shall access, dispose of, transfer, or execute these funds" without the Arbitral Tribunal's prior and express authorization. *Id.* at 40. It explains that the Arbitration Award "is of an interim nature and is issued solely for the purpose of preserving the object of the dispute and the rights of the parties while the merits of the controversy are resolved." *Id.* at 41. On July 25, 2025, the Arbitral Tribunal issued an order, reaffirming its Arbitration Award and directing the parties "to refrain from any conduct that would" violate the Arbitration Award. [ECF No. 1–3].

### C. This Action

On August 29, 2025, Grupo commenced this action, seeking to enforce the Arbitration Award. [ECF No. 1]. On October 3, 2025, Rojas filed a Response in Opposition, arguing that the

---

[2] The Arbitral Tribunal noted that it "modifie[d] and adjuste[d] the amount of the precautionary measures previously ordered by" the Venezuelan court. [ECF No. 1–2, at 40–41].

Court should not (and cannot) enforce the Arbitration Award. [ECF No. 16]. On October 15, 2025, Grupo filed a Reply in support of its Petition. [ECF No. 23]. In essence, the parties dispute the enforceability of the Arbitration Award.

In addition to enforcing the Arbitration Award, Grupo also asks the Court to prohibit JPMorgan from transferring, dissipating, or otherwise interfering with certain funds held in accounts at JPMorgan that are owned or controlled by Rojas. [ECF No. 1, at 13]. As a disinterested stakeholder in this proceeding, JPMorgan moved to deposit the funds into the Court Registry. [ECF No. 14]. On October 16, 2025, the Court ordered JPMorgan to deposit the funds in its possession, totaling $713,991.91, into the Court Registry. [ECF No. 24]. On October 27, 2025, in compliance with the Court's Order, JPMorgan deposited the funds into the Court Registry. [ECF No. 27].[3]

## II.  LEGAL STANDARD

The "Supreme Court has emphasized that the United States has a federal policy in favor of arbitral dispute resolution which applies with special force in the field of international commerce." *Cvoro v. Carnival Corp.*, 941 F.3d 487, 495 (11th Cir. 2019) (citation and quotation marks omitted). Consistent with this policy, a "federal court's review of an arbitration award is highly deferential and extremely limited." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1271 (11th Cir. 2015). Indeed, the "review of an arbitration decision" is "among the narrowest known to the law." *Tecnicas Reunidas de Talara S.A.C. v. SSK Ingenieria y Construccion S.A.C.*, 40 F.4th 1339, 1344 (11th Cir. 2022) (cleaned up).

"[A]fter arbitration is completed, a party may file a motion to confirm the arbitral award, at which time the opposing party may raise a particular set of defenses as to whether the district

---

[3] Because Grupo's Petition names JPMorgan as a Relief Respondent since it is the holder of the funds, *see* [ECF No. 1, ¶ 17], the Court dismissed JPMorgan from this action without prejudice. [ECF No. 24].

court should enforce the arbitral award." *Cvoro*, 941 F.3d at 495. "Federal review of an international arbitration is often governed by either" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, (the "New York Convention") or the Inter-American Convention on International Commercial Arbitration of January 30, 1975, (referred to as the "Inter-American Convention" or the "Panama Convention"). *Tecnicas Reunidas de Talara S.A.C.*, 40 F.4th at 1344 (*citing* 9 U.S.C. §§ 202, 305). Codified in Chapter Two of the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. §§ 201–08, the New York Convention "governs enforcement of international arbitration awards" and "applies to all arbitration awards arising out of commercial relationships that are not purely domestic." *Tecnicas Reunidas de Talara S.A.C. v. SSK Ingeneria y Construccion S.A.C.*, No. 21-22206-CIV, 2021 WL 5098219, at *2 (S.D. Fla. Oct. 12, 2021) (cleaned up).

Similarly, codified in Chapter Three of the FAA, *see* 9 U.S.C. §§ 301–07, the Panama Convention "governs enforcement of international arbitration awards and largely incorporates the New York Convention." *Id.*; *Wilson v. Carnival Corp.*, No. 22-22492-CIV, 2022 WL 17250521, at *2 (S.D. Fla. Nov. 28, 2022), *aff'd*, No. 23-10122, 2024 WL 1460160 (11th Cir. Apr. 4, 2024) ("Chapter 3 transposes into federal law the [Panama] Convention"). Section 302 of the FAA "incorporate[s] sections 202, 203, 204, 205, and 207 of the [FAA] to apply to arbitrations governed by the Panama Convention." *Tecnicas Reunidas de Talara S.A.C.*, 40 F.4th at 1344. "And it is well-settled that where the New York and Panama Conventions are substantively the same . . . decisions under the New York Convention apply with equal force to cases under the Panama Convention." *Id.*

### III.   DISCUSSION

### A.   The Applicable Convention

As a preliminary matter, Grupo argues that the "Inter-American Convention and the New York Convention *both* govern enforcement of the [Arbitration] Award" here. [ECF No. 1, ¶ 8] (emphasis added). Not so. To determine whether the New York Convention or the Inter-American Convention applies, section 305 of the FAA explains that "[i]f a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Inter-American Convention and are member States of the Organization of American States, the Inter-American Convention shall apply." 9 U.S.C. § 305; *Tecnicas Reunidas de Talara S.A.C.*, 40 F.4th at 1344 (*citing* 9 U.S.C. § 305 and applying the Inter-American Convention). But in "all other cases" the New York Convention applies. *Id.*

Here, Grupo and Rojas are citizens of Venezuela. [ECF No. 1, ¶¶ 6–7]. Venezuela has ratified the Panama Convention and is a member of the Organization of American States. *Id.* ¶8.[4] Accordingly, the Panama Convention applies here. *See Samsung Elecs. Latinoamerica (Zona Libre), S.A. v. MV Commuincations Grp., Inc., (Panama)*, No. 24-CV-24215, 2025 WL 2318454, at *1 (S.D. Fla. Aug. 12, 2025) ("[T]he Panama Convention displaces the New York Convention whenever 'a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to' it."); *Wilson*, 2022 WL 17250521 (same).

### B.   Recognition and Enforcement of the Arbitration Award

"To obtain recognition and enforcement of an arbitration award under the Convention, at the time of the application, a petitioner must provide: (1) the duly authenticated original award or a duly certified copy thereof; and (2) the arbitration agreement or a duly certified copy thereof."

---

[4] *See* Dep't Int'l L., Org. Am. States, *Signatories and Ratifications, (B-35): Inter-American Convention on International Arbitration*, OAS, http://www.oas.org/juridico/english/sigs/b-35.html.

*Samsung Elecs. Latinoamerica (Zona Libre), S.A.*, 2025 WL 2318454, at *2 (quoting *Noble Prestige Ltd. v. Horn*, No. 20-82357-CIV, 2024 WL 2109045 (S.D. Fla. Apr. 3, 2024). Grupo has satisfied its burden here. It provided the Court with a copy of the Arbitration Award, [ECF No. 1–2], and a copy of the arbitration agreement, [ECF No. 35–1]. Thus, because Grupo, as "the proponent of the award," carried its "jurisdictional burden of providing a certified copy of the award and the arbitration agreement," it has "establishe[d] a prima facie case for confirmation of the award." *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 n.3 (11th Cir. 2004) .

The "burden [now] shifts to [Rojas] to establish the invalidity of the Arbitral Award[]." *Noble Prestige Ltd. v. Horn*, No. 20-82357-CIV, 2024 WL 2109045, at *2 (S.D. Fla. Apr. 3, 2024), *appeal dismissed*, No. 24-11456-HH, 2024 WL 5679917 (11th Cir. Dec. 5, 2024). As the "party opposing enforcement of the award," Rojas "has the burden of proving" the defenses against enforcement of the Arbitration Award. *Cvoro*, 941 F.3d at 495. And the "burden of escaping award confirmation is high[.]" *Venezuela US SRL v. Bolivarian Republic of Venezuela*, 789 F. Supp. 3d 1, 6 (D.D.C. 2025), *aff'd*, No. 25-7096, 2026 WL 1700258 (D.C. Cir. June 12, 2026).

### C.   Defenses in Opposition to the Recognition and Enforcement of the Arbitration Award

"At this arbitration-award-enforcement stage, a district court must confirm the arbitral award unless a party successfully assert[s]" a "defense[] against enforcement of the award[.]" *Cvoro*, 941 F.3d at 495 (internal quotation marks omitted). The Panama Convention includes seven defenses:

(1) The parties to the agreement were subject to some incapacity under the applicable law or that the agreement is not valid under the law to which the parties have submitted it, or, if such law is not specified, under the law of the State in which the decision was made; or

(2) The party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration

7

procedure to be followed, or was unable, for any other reason, to present his defense; or

(3) The decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration; nevertheless, if the provisions of the decision that refer to issues submitted to arbitration can be separated from those not submitted to arbitration, the former may be recognized and executed; or

(4) The constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, that the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the law of the State where the arbitration took place; or

(5) The decision is not yet binding on the parties or has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made.

. . .

(6) The subject of the dispute cannot be settled by arbitration under the law of that State; or

(7) The recognition or execution of the decision would be contrary to the public policy ("ordre public") of that State.

*Samsung Elecs. Latinoamerica (Zona Libre), S.A.*, 2025 WL 2318454, at *2–3 (*citing* the Panama Convention); *EGI-VSR, LLC v. Coderch Mitjans*, 963 F.3d 1112, 1121 (11th Cir. 2020). Rojas raises only one of these defenses here: that the Arbitration Award "violates the public policy of Florida." [ECF No. 16, at 1]. He also asserts that the Arbitration Award is "an interim order that cannot be confirmed, as only final orders are subject to confirmation." *Id*. The Court will address the latter defense first.

### (i)    The Arbitration Award Can be Enforced Despite Being an Interim Award

Generally, "the FAA allows review of final arbitral awards only, but not of interim or partial rulings" that "clearly established that the arbitrator's work was not complete." *Schatt v.*

8

*Aventura Limousine & Transp. Serv., Inc.*, 603 F. App'x 881, 887 (11th Cir. 2015). But not all interim awards are considered non-final. Rather, "an interim award may at times be considered final, such that a district court may then 'confirm' the award[.]" *Al Raha Grp. for Tech. Servs. v. PKL Servs., Inc.*, No. 1:18-CV-04194-AT, 2019 WL 4267765, at *2 (N.D. Ga. Sept. 6, 2019); *Hamdorf v. United Healthcare Servs., Inc.*, No. 2:23-MC-00215-HLT, 2024 WL 3738056, at *2 (D. Kan. Jan. 31, 2024) (agreeing that "the fact that the underlying award was interim does not prevent it from being confirmed.").

An interim award "is sufficiently final if it finally and definitely disposes of a separate independent claim even [if] it does not dispose of all the claims that were submitted to arbitration." *Banco de Seguros del Estado v. Mut. Marine Offs., Inc.*, 230 F. Supp. 2d 362, 369 (S.D.N.Y. 2002) (cleaned up); *C. Czarnikow Sugar, Inc. v. Pullman Sugar, LLC*, No. 24-CV-23809, 2025 WL 3165224, at *3 (S.D. Fla. Nov. 12, 2025) (noting that an interim award is final "if it finally disposes of a separate independent claim."); *Al Raha Grp. for Tech. Servs.*, 2019 WL 4267765, at *2 (same); *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, No. 11 CIV. 1040 RJS, 2012 WL 104773, at *3 (S.D.N.Y. Jan. 10, 2012) (same); *Blue Cross Blue Shield of Mich. v. Medimpact Healthcare Sys., Inc.*, 2010 WL 2595340, at *2 (E.D. Mich. 2010) (same). Here, the Arbitration Award is final because it resolved and disposed of the separate and independent issue of precautionary measures.[5] At the outset of the arbitration proceeding, the Arbitral Tribunal bifurcated the proceeding into two separate and independent stages. [ECF No. 1–2 at 9–10]. The first stage addressed "the dispute between the parties regarding a precautionary

---

[5] The Court notes that Rojas agreed in the Framework Agreement that the "parties may request precautionary measures even before the Arbitral Tribunal . . . in case of urgency." [ECF No. 35–1 at 55]. Consistent with his agreement, Rojas did not challenge the Arbitral Tribunal's authority to issue precautionary measures. Rather, "both parties agree[d] that th[e] Arbitral Tribunal has jurisdiction to rule on the precautionary measure" requested by Grupo. [ECF No. 1–2, at 22].

measure requested by" Grupo. *Id.* at 9. The parties submitted their briefs and evidence on this issue, and the Arbitral Tribunal held a hearing. *Id.* at 13, 14–17. And after reviewing all submissions and evidence, the Arbitral Tribunal rendered the Arbitration Award. "[T]his decision," the Arbitral Tribunal notes, "addresses solely and exclusively the requested precautionary measure and does not prejudge the merits of the underlying controversy," *id.* at 9, which is left for the second separate stage of the proceeding.

Further, "[d]espite its interim nature," the Arbitration Award "granting equitable relief to [Grupo] is sufficiently final to be confirmed under the FAA" *Vital Pharms. v. PepsiCo, Inc.*, 528 F. Supp. 3d 1304, 1308 (S.D. Fla. 2020). Courts "have found that confirmation of interim arbitral orders granting injunctive" and equitable "relief is appropriate under" the FAA. *Id*; *Yonir Techs., Inc. v. Duration Sys. (1992) Ltd.,* 244 F. Supp. 2d 195, 204 (S.D.N.Y. 2002) (holding that "equitable orders involving the preservation of assets," as here, "related to the subject of arbitration are generally considered 'final' arbitral orders subject to judicial review."); *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp*., 935 F.2d 1019, 1022–23 (9th Cir. 1991) (holding that "[t]emporary equitable relief in arbitration may be essential to preserve assets or enforce performance which, if not preserved or enforced, may render a final award meaningless."); *Hamdorf*, 2024 WL 3738056, at * 3 (confirming an interim award granting temporary injunctive relief).

The Arbitration Award grants Grupo equitable relief in the form of an asset freeze. As noted by the Arbitral Tribunal, it was "issued solely for the purpose of preserving the object of the dispute and the rights of the parties while the merits of the controversy are resolved." [ECF No. 1–2 at 41]. And for this equitable relief "to have any meaning, the relief must be enforceable at the time it is granted, not after an arbitrator's final decision on the merits." *Pac. Reinsurance Mgmt.*

10

*Corp.*, 935 F.2d at 1023; *Vital Pharms.*, 528 F. Supp. 3d at 1308 (holding that enforcing the injunction ordered by the arbitral tribunal "is necessary to make final relief meaningful.") (citation omitted); *Arrowhead Glob. Sols., Inc. v. Datapath, Inc.*, 166 F. App'x 39, 44 (4th Cir. 2006) (holding that "district courts must have the power to confirm and enforce [temporary] equitable relief as 'final' in order for the equitable relief to have teeth."); *Ace/Cleardefense, Inc. v. Clear Def., Inc.*, 47 F. App'x 582, 582 (D.C. Cir. 2002) (affirming the district court's confirmation of an interim reward because it was "a preliminary injunction, and confirmation of the injunction is necessary to make final relief meaningful").

### (ii)   Enforcing the Arbitration Award Does Not Violate Public Policy

Next, Rojas looks to the Panama Convention's public policy defense to oppose enforcement of the Arbitration Award. As the Eleventh Circuit has explained, the "public-policy defense under the [Panama] Convention is very narrow and is likewise to be construed narrowly in the light of the presumption favoring enforcement of international arbitral awards." *Tecnicas Reunidas de Talara S.A.C.*, 40 F.4th at 1344–45 (cleaned up). "Indeed, the public policy at issue must be explicit, well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general consideration of supposed public interests." *Tecnicas Reunidas de Talara S.A.C.*, 2021 WL 5098219, at *5 (cleaned up). This defense "applies where enforcement [of] the award would violate the forum state's most basic notions of morality and justice." *Costa v. Celebrity Cruises, Inc.*, 768 F. Supp. 2d 1237, 1241 (S.D. Fla. 2011), *aff'd*, 470 F. App'x 726 (11th Cir. 2012) (citation and quotation marks omitted). And "[e]ven where a legitimate public policy is identified by the party opposing the confirmation of an award, [the Court] must consider that the United States has a federal policy in favor of arbitral dispute resolution which applies with special force in the field of international commerce." *Tecnicas Reunidas de Talara S.A.C.*, 40 F.4th

11

at 1345 (citation and quotation marks omitted). In short, while "this defense is frequently raised, it has rarely been successful." *Cvoro*, 941 F.3d at 495 (citation and quotation marks omitted). This action is no different.

Rojas contends that the Arbitration Award "is the equivalent of a pre-judgment attachment" and an "asset freeze order." [ECF No. 16 at 10]. Enforcement of the Arbitration Award, Rojas argues, is "beyond the of power of" this Court and "manifestly contrary to the public policy of the United States." *Id.* The Court disagrees. Enforcing the Arbitration Award here would not be contrary to an explicit, well-defined, and dominant United States public policy. Indeed, as discussed above, courts routinely recognize and enforce interim arbitral awards, like the one here.

In sum, Rojas has not met his high burden to escape confirmation and enforcement of the Arbitration Award. Accordingly, the Arbitration Award must be enforced.

## IV.     CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

(1)     Petitioner Grupo Alazán, C.A.'s Verified Petition to Confirm and Enforce Interim International Arbitration Award, [ECF No. 1], is **GRANTED**.

(2)     The Arbitration Award is **CONFIRMED**.

(3)     All pending motions are **DENIED as moot**.

(4)     By **August 14, 2026**, Grupo Alazán, C.A., shall submit a proposed Final Judgment that is consist with the Arbitration Award, [ECF No. 1–2].

(5)     This case is **CLOSED** for administrative purposes.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of August, 2026.

_____
**DARRIN P. GAYLES**
**UNITED STATES DISTRICT JUDGE**

12